Filed 3/18/20

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B293491 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA095648) |
| v. | |
| GREGORY STEVEN GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Yvette Verastegui, Judge. Affirmed with modifications.

David Y. Stanley under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, William H. Shin and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion section.

* * * * * *

Trial courts now have the discretion to "strike or dismiss" a firearm enhancement pled by the People and found true by a jury beyond a reasonable doubt. (Pen. Code, § 12022.53, subd. (h).)[1] But does a trial court have the discretion to substitute the firearm enhancement found true by the jury for a lesser enhancement never presented to that jury? So far, the courts have split on the question. *People v. Morrison* (2019) 34 Cal.App.5th 217 (*Morrison*) says "yes," while *People v. Tirado* (2019) 38 Cal.App.5th 637 (*Tirado*), review granted Nov. 13, 2019, No. S257658, says "no." Our Supreme Court has granted review on this question, and we publish to provide additional reasons supporting *Tirado*'s position. In the unpublished portion of this opinion, we reject a challenge to the imposition of the restitution fine and court fees but order the trial court to correct a clerical error in the abstract of judgment. But for this correction, we affirm the conviction and sentence.

**FACTS AND PROCEDURAL BACKGROUND**

## I. Facts

Gregory Steven Garcia (defendant) went to Xavier Martinez's apartment, and then fired multiple shots, striking him in the back of the head. Defendant later told his brother that he would get away with it because "they don't have the burner"— that is, the gun—"[he] used."

## II. Procedural Background

The People charged defendant with murder (Pen. Code, § 187, subd. (a)). The People further alleged all three firearm enhancements set forth in section 12022.53—namely, that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

defendant "personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury" (§ 12022.53, subd. (d)), that he "personally and intentionally discharge[d] a firearm" (*id.*, subd. (c)), and that he "personally use[d] a firearm" (*id.*, subd. (b)). The People additionally alleged that the murder was "committed for the benefit of, at the direction of, and in association with a criminal street gang" (§ 186.22, subd. (b)(1)(C)) and that defendant was on bail at the time of the crime (§ 12022.1).

The matter proceeded to trial. The trial court instructed the jury on the crimes of first degree murder, second degree murder, and voluntary manslaughter due to provocation and due to imperfect self-defense as well as the defense of perfect self-defense. The court also instructed on the firearm enhancement for personally and intentionally discharging a firearm and proximately causing great bodily injury, but with the concurrence of the parties did not instruct on either of the lesser included firearm enhancements. The jury convicted defendant of second degree murder and found the firearm enhancement true.[2]

The trial court sentenced defendant to prison for 40 years to life, comprised of 15 years to life for the second degree murder and a consecutive 25 years to life for the firearm enhancement. The court denied defendant's motion to strike the firearm enhancement. In so ruling, the court explained how the relative youth of both defendant and the victim made it "incredibly difficult" not to strike the enhancement, but the court ultimately found that it could not "discount" the "compelling fact" that

---

[2]	The jury was instructed on the gang enhancement, but found it not to be true. The jury was not instructed on the bail enhancement.

3

defendant "went to the victim's home and sought out the victim" in order to kill him.  This premeditative conduct, the court reasoned, distinguished this case from "a situation in which" "things happen" when "two young men" "me[e]t up on a street." The court also imposed a $300 restitution fine (§ 1202.4, subd. (b)), a $40 court security fee (§ 1465.8) and a $30 criminal conviction assessment (Gov. Code, § 70373).

Defendant filed a timely appeal.

## DISCUSSION

### I.  Discretion to Substitute Lesser Included Firearm Enhancement

Section 12022.53 creates three firearm enhancements—a 25-year enhancement for "personally and intentionally discharg[ing] a firearm and proximately caus[ing] great bodily injury" (§ 12022.53, subd. (d)), a 20-year enhancement for "personally and intentionally discharg[ing] a firearm" (but without proximately causing great bodily injury) (*id.*, subd. (c)), and a 10-year enhancement for "personally us[ing] a firearm" (*id.*, subd. (b)).  That section also grants a trial court the discretion to "strike or dismiss an enhancement" it was "otherwise required to . . . impose[]" "in the interest of justice pursuant to Section 1385." (*Id.*, subd. (h).)  Defendant argues that the trial court erred in not striking the 25-year enhancement because it mistakenly believed it was faced with an all-or-nothing choice between imposing a 25-year enhancement or no enhancement, when the court also had the option of imposing the lesser included 20-year or 10-year enhancements.  The court's failure to appreciate its discretion, defendant reasons, constituted an abuse of discretion.  (*People v. Pearson* (2013) 56 Cal.4th 393, 419 [court abuses its discretion when it misunderstands the scope of that discretion].)

4

Defendant's argument in this case accordingly presents the same question posed in *Morrison*, *supra*, 34 Cal.App.5th 217 and *Tirado*, *supra*, 38 Cal.App.5th 637: Does section 12022.53, subdivision (h) grant a trial court the discretion not only to "strike or dismiss" a firearm enhancement pled and proven to a jury, but also to substitute a lesser included enhancement? Because this question involves the scope of a trial court's discretion rather than its exercise, it is a question of law reviewed de novo rather than a question of discretion reviewed solely for an abuse of discretion. (Compare *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; *People v. Waidla* (2000) 22 Cal.4th 690, 733 with *People v. Carmony* (2004) 33 Cal.4th 367, 373.)

We agree with *Tirado* that section 12022.53, subdivision (h) does not grant a trial court the discretion to substitute lesser included enhancements, at least where the greater enhancement is legally and factually valid. We reach this conclusion for three reasons.

First, this is the result dictated by the statute's plain language. When interpreting a statute, we start with its text, and if its plain meaning is unambiguous, we end there as well. (*People v. Superior Court* (*Zamudio*) 23 Cal.4th 183, 192.) Here, section 12022.53, subdivision (h) confers the authority to "strike or dismiss" a firearm enhancement set forth in section 12022.53. Significantly, it says nothing about substituting or modifying enhancements. (§ 12022.53, subd. (h).) The act of striking an allegation and the act of substituting or modifying one allegation for another are not fungible. (See *Kitte v. Bellegarde* (1890) 86 Cal. 556, 563 [substitution of a party plaintiff is different from striking parties].) When our Legislature has wanted to grant a

court the power to modify one crime or enhancement for another—or, more to the point, to substitute a lesser crime or enhancement for another—it has done so expressly. (§ 1181, subd. (6) [granting trial court's the power to "modify the verdict" to substitute a "lesser degree" of a "crime of which he was convicted" if "the verdict or finding" on the greater crime is "contrary to . . . the evidence"], § 1260 [granting appellate courts the power to "reverse, affirm or modify a judgment or order appealed from, or reduce the degree of the offense . . . or the punishment imposed . . ."].) The Legislature's failure to include such language in section 12022.53, subdivision (h) speaks volumes (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 1717, 727 ["failure to include a requirement in one statute is significant when the legislative body has included that requirement in other statutes"]), and must be given effect (accord, *People v. VonWahlde* (2016) 3 Cal.App.5th 1187, 1197-1198 [section 1385 does not include discretion to terminate parole because it falls outside the discretion to "dismiss" an "action" conferred by the statute's plain text]; *People v. Tuck* (2012) 204 Cal.App.4th 724, 730-731 [same, as to sex offender registration]). Thus, defendant is effectively inviting us to amend section 12022.53, subdivision (h) by changing "strike or dismiss" to "strike, dismiss or modify." This is an invitation we must decline. (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571 [courts "may not add to the statute or rewrite it"].)

Second, this is the result dictated by the separation of powers absent a legislative override. The decision of what charges to bring (or not to bring)—and, more to the point here, which sentencing enhancement to allege (or not to allege)—ordinarily belongs to the prosecutors who are charged with

6

executing our state's criminal law.  (*People v. Birks* (1998) 19 Cal.4th 108, 134 [so noting] (*Birks*); *People v. Jerez* (1989) 208 Cal.App.3d 132, 138 ["the district attorney can allege what he chooses at the time he chooses . . ."]; see generally, Gov. Code, § 26501 [vesting "district attorney" with the power to "institute proceedings" against persons "reasonably suspected of public offenses"].)  The prosecutor's charging authority "includes" the authority to seek the "maxim[um] . . . available sentence (including charging of enhancements) to which a defendant might be exposed in the event of conviction . . ."  (*People v. Bizieff* (1990) 226 Cal.App.3d 130, 138.)  The authority is even greater when it comes to alleging sentencing enhancements:  Although a prosecutor's discretion to seek the maximum sentence by only charging the criminal offense with the highest sentence is curtailed to some degree by the sua sponte judicial duty to instruct on lesser included offenses so as to avoid putting the jury to an "all-or-nothing" choice (*Schad v. Arizona* (1991) 501 U.S. 624, 646-647), there is no such duty when it comes to "'lesser included [sentencing] enhancements'" (*People v. Majors* (1998) 18 Cal.4th 385, 410-411), such that, absent a constitutional violation, the prosecutor's decision not to charge a particular enhancement "generally is not subject to supervision"—or second guessing—"by the judicial branch."  (*People v. Mancebo* (2002) 27 Cal.4th 735, 749 ["the People's failure to include a [particular] allegation must be deemed a discretionary charging decision."]; *Birks,* at p. 134; *United States v. Batchelder* (1979) 442 U.S. 114, 125 [prosecutor's decision to charge crimes and enhancements yielding a greater punishment, "standing alone, does not give rise to a violation" of equal protection].)  Construing section 12022.53, subdivision (h) to allow a court to substitute a lesser included

firearm enhancement would overstep the carefully drawn line delineating the powers of the judicial and executive branches.

Third, this is the result dictated by the rules governing when to instruct the jury on lesser offenses and enhancements. It is well settled that a court may instruct a jury on a lesser included offense only if there is substantial evidence from which a rational jury could find that "'the defendant committed the lesser offense, and that he is not guilty of the greater [charged] offense.' [Citations.]" (*People v. Whalen* (2013) 56 Cal.4th 1, 68.) The same rule ostensibly applies when a court, if so requested, is deciding whether to instruct on a lesser included *enhancement*. On the facts of this case, substantial evidence does not support instructing the jury on either of the lesser included firearm enhancements because no rational jury could find that defendant engaged in conduct warranting the lesser included enhancements (that is, personally using a firearm or intentionally discharging it but not causing serious bodily injury) but not the greater enhancement (that is, intentionally discharging the firearm and causing serious bodily injury). That is because it was undisputed that the victim was shot in the back of the head and died from that wound. Construing section 12022.53, subdivision (h) to allow a court to substitute a lesser included firearm enhancement would empower a court to do on the back end what a court is prohibited from allowing a jury to do on the front end.

*Morrison* came to its contrary conclusion that trial courts had the authority under section 12022.53, subdivision (h), to impose a "middle ground" firearm enhancement based on two arguments that, in our view, do not withstand scrutiny. (*Morrison*, *supra*, 34 Cal.App.5th at p. 223.)

First, *Morrison* drew upon the well-recognized power of courts to impose a lesser included, but uncharged, enhancement "when a greater enhancement found true by the trier of fact is either legally inapplicable or unsupported by sufficient evidence." (*Morrison*, *supra*, 34 Cal.App.5th at p. 222.) To be sure, there is a line of authority—tracing all the way back to *People v. Strickland* (1974) 11 Cal.3d 946—acknowledging the power of a trial court to "substitute[] . . . a charged enhancement with an uncharged "'lesser included enhancement'"'" where there is some defect—legal or factual—with the greater enhancement. (*People v. Fialho* (2014) 229 Cal.App.4th 1389, 1396-1397; *People v. Lucas* (1997) 55 Cal.App.4th 721, 743; *People v. Allen* (1985) 165 Cal.App.3d 616, 627; *People v. Dixon* (2007) 153 Cal.App.4th 985, 1002.) But this power is limited to situations where the greater enhancement is defective. That is because this inherent power of courts serves a very specific purpose—that is, to enable courts to salvage as much of the prosecutor's charging decision and the jury's verdict as possible by allowing them to substitute a lesser included enhancement also found by the jury rather than impose no enhancement at all. (E.g., *People v. Crooks* (1997) 55 Cal.App.4th 797, 811 [noting courts' "inherent authority to correct an unauthorized sentence"]; *People v. Relkin* (2016) 6 Cal.App.5th 1188, 1198 [same].) This line of authority does not provide any basis for extending the language of section 12022.53, subdivision (h) to allow a court to act when the greater enhancement is not defective and thus to substitute a perfectly valid greater enhancement for a lesser included enhancement. That is because doing so would *undercut*—rather than effectuate—the prosecutor's charging decision and the jury's verdict.

9

Second, *Morrison* reasoned that language in *People v. Marsh* (1984) 36 Cal.3d 134 (*Marsh*) "buttressed" its holding.  To be sure, *Marsh* does state—as *Morrison* recites—that "'there is a broad range of sentencing options'" under section 1385 "'between th[e] extremes'" of striking two different sentencing enhancements or leaving them intact.  (*Morrison, supra*, 34 Cal.App.5th at pp. 222-223, quoting *Marsh*, at p. 144.)  But *Marsh* simply recognized that the trial court had the discretion under section 1385 to strike both of the kidnapping sentencing enhancements at play in that case, to strike only one of them, or to strike neither.  (*Marsh*, at pp. 143-144.)  *Marsh*'s comment that a court could exercise its power to "dismiss" individually charged and proven enhancements says nothing about whether the court also has the power to substitute lesser included enhancements for a valid greater enhancement.

For these reasons, we join *Tirado* in its holding that section 12022.53, subdivision (h) does not grant trial courts the discretion to substitute lesser included firearm enhancements.  As a consequence, the trial court in this case properly understood the scope of its discretion and its decision not to exercise that discretion was appropriate.

## II. Remaining Issues

### A. *Challenge to restitution fine and court fees*

Relying upon *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant contends that the trial court's imposition of the $300 restitution fine and $70 in assessments without an ability to pay hearing (1) violated due process and (2) constituted cruel and unusual punishment. These are constitutional questions that we review de novo. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1154.)

10

We reject defendant's due process-based argument for two reasons.  First, the sole basis for defendant's argument is *Dueñas*, *supra*, 30 Cal.App.5th 1157.  However, we have rejected *Dueñas's* reasoning.  (See *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946.)  Second, even if *Dueñas* were good law, the trial court's failure to conduct an ability to pay hearing when imposing $370 in monetary obligations was harmless because defendant will earn that amount as prison wages during just the 15-year sentence for his murder conviction and hence long prior to his release.  (Accord, *People v. Johnson* (2019) 35 Cal.App.5th 134, 139 ["The idea that [defendant] cannot afford to pay $370 while serving an eight-year prison sentence is unsustainable."].)

And to the extent defendant argues that the $370 in monetary obligations constitutes cruel and unusual punishment, we reject that argument as well.  Whether such an obligation is excessive for these purposes turns on whether it is "grossly disproportional to the gravity of [the] defendant's offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334 (*Bajakajian*), superseded by statute on other grounds as stated in *United States v. Jose* (2007) 499 F.3d 105, 110.)  Factors relevant to gross disproportionality include "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay.  [Citations.]"  (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.)  Under this standard, a defendant's ability to pay is a factor, not the only factor.  (*Bajakajian*, at pp. 337-338.)  Applying these factors, we conclude that the minimum monetary obligations totaling $370

11

are not grossly disproportionate to his crime of seeking out his victim and fatally shooting him in the back of the head.

### B. *Clerical error with abstract of judgment*

Defendant also argues that the abstract of judgment incorrectly records that he was convicted of "first degree murder" rather than "second degree murder." The People concede this error. The abstract of judgment should therefore be modified. (*People v. Vega* (2015) 236 Cal.App.4th 484, 506.)

## DISPOSITION

It is ordered that the trial court prepare and forward to the California Department of Corrections and Rehabilitation a modified abstract of judgment.  It should reflect that defendant was convicted of second degree murder, not first degree murder. As modified, the judgment is affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION**.


_____, J.
HOFFSTADT

We concur:


_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ

13